IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER STEELE,            )
                               )
            Plaintiff,         )
                               )   CIVIL ACTION
v.                             )
                               )   No. 15-1100-KHV
CAROLYN W. COLVIN,             )
Acting Commissioner of Social Security, )
                               )
            Defendant.         )
_____ )

**MEMORANDUM AND ORDER**

Christopher Steele appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 et seq., and supplemental security income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381 et seq. For reasons set forth below, the Court finds that the final decision of the Commissioner should be reversed and remanded for further proceedings.

**I.    Procedural Background**

On May 25, 2011, plaintiff filed an application with the Social Security Administration for disability insurance benefits.[1] He alleged a disability onset date of December 31, 2008 due to mental health issues, restless leg syndrome and asthma. He also filed an application for supplemental security income. The agency denied his applications initially and on reconsideration. On July 26, 2013, an administrative law judge ("ALJ") conducted a video hearing. On August 19, 2013, the ALJ concluded that plaintiff was not under a disability as defined in the SSA and that he

---

[1] The ALJ decision states that plaintiff filed his application under Title II on December 9, 2010. The record reflects, however, that he filed it on May 25, 2011. See Doc. #10 at 189-90.

was not entitled to benefits. On January 30, 2015, the Appeals Council denied plaintiff's request for review. Plaintiff appeals to this Court the final decision of the Commissioner.

**II.     Standard Of Review**

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**III.    Framework For Analyzing Claims Of Disability**

Plaintiff bears the burden of proving disability under the SSA. Wall, 561 F.3d at 1062. Plaintiff is under a disability if he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines (1) whether plaintiff has engaged in substantial gainful activity since the alleged onset, (2) whether he has a severe impairment or combination of impairments and (3) whether the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(c), (d); see Williams, 844 F.2d at 750-51. If plaintiff satisfies steps one, two and three, the Commissioner will automatically find him disabled. If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ must make specific factual findings regarding plaintiff's abilities in three phases. See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996). First, the ALJ determines plaintiff's physical and mental residual functioning capacity ("RFC"). Id. at 1023. Second, the ALJ determines the physical and mental demands of plaintiff's past relevant work. Id. Third, the ALJ determines whether despite the mental and/or physical limitations found in phase one, plaintiff has the ability to meet the job demands found in phase two. Id.; Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). If plaintiff satisfies step four, i.e. if plaintiff shows that he is not capable of performing past relevant work, the burden shifts to the Commissioner to establish that plaintiff is capable of performing other work in the national economy. Williams, 844 F.2d at 750-51.

**IV.    Facts**

The following is a brief summary of the record.

A.      Medical Evidence

Plaintiff was born in 1971. He alleges that he has been unable to work due to a disability beginning on December 31, 2008.

From 2008 through 2013, plaintiff sought treatment for physical complaints including asthma, restless leg syndrome, leg pain and swelling, arm and back pain and generalized pain. In 2011 and 2012, plaintiff also sought mental health treatment for depression and drug use.

On September 23, 2008, doctors diagnosed acute strain of the lumbar spine and low back pain. Tr. 417.

From November 11, 2009 to August 13, 2010, Natalie Montoya, M.D., treated plaintiff for problems sleeping and leg cramps at night. Dr. Montoya diagnosed restless leg syndrome, extrinsic asthma with acute exacerbation, elevated blood pressure and insomnia, shoulder pain and situational depressive reaction.

On March 14, 2011, Amy Mohr, A.A.P.S., evaluated plaintiff. Plaintiff reported difficulty sleeping and occasional racing thoughts. Plaintiff reported current marijuana use, but no other illegal drug use for around a year. Tr. 340. Plaintiff stated that he used marijuana to help with his restless leg syndrome. Tr. 339. Mohr noted that plaintiff's memory, concentration, comprehension, judgment and insight were all fair. Id. She assessed cannabis dependence with a Global Assessment of Functioning ("GAF") score of 60, indicating moderate impairment in social or occupational

functioning. Tr. 342.³ Plaintiff attended several group therapy sessions to teach him ways other than using marijuana to cope with stress and emotions.

On April 29, 2011, plaintiff saw Sarah Post, L.M.S.W., for a suicide assessment. Tr. 363. Post noted that plaintiff had an anxious and tearful mood and affect when discussing issues with his wife. Plaintiff reported fleeting suicidal thoughts.

Florante Mancao, M.D., treated plaintiff from April 21, 2011 to November 22, 2011. Dr. Mancao diagnosed restless leg syndrome, anxiety, insomnia and decreased memory. Tr. 424.

On July 19, 2011, Andrew Lauronilla, M.D., evaluated plaintiff, who complained of depression and irritability since the death of his brother three years earlier. Tr. 396. Plaintiff reported that he had last used marijuana on April 29, 2011, and last used methamphetamines in March of 2011. Tr. 397. Dr. Lauronilla noted that plaintiff's insight and judgment were fair. Id. Dr. Lauronilla diagnosed cannabis dependence and depressive disorder. Dr. Lauronilla assessed a GAF score of 60. Tr. 398.

On September 8, 2011, Dr. James Henderson, M.D., completed a consultative examination report. Dr. Henderson opined that plaintiff had asthma, arthralgias including knee pain with limited range of motion, and a history of depression and anxiety. Tr. 401-04.

On November 22, 2011, plaintiff had a CT scan of his head due to reported headaches and confusion. The CT scan was normal. Tr. 440.

On February 6, 2012, state agency physician Mary Tawadros, M.D., reviewed plaintiff's

---

³ The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social and occupational functioning. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (citing Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000) (DSM IV)).

medical records and opined that he did not have any severe physical impairments. Tr. 76, 473.

On August 31, 2011, state agency psychologist Carol Adams, Psy.D., completed a Psychiatric Review Technique for Disability Determination Services ("DDS"). She opined that plaintiff had non-severe mental impairments including affective disorder and cannabis abuse in remission. Dr. Adams stated that these impairments would cause a mild degree of limitation in activities of daily living, maintaining concentration, persistence or pace and maintaining social functioning. Tr. 57-59.

On February 7, 2012, state agency psychologist E. Bergmann-Harms, Ph.D., completed a Psychiatric Review Technique. She opined that plaintiff had mental impairments including affective disorder, anxiety disorder and moderate limitations in his ability to interact socially. Tr. 77-79. She opined that plaintiff's mental impairments caused mild restrictions in his activities of daily living and in maintaining concentration, persistence or pace, and moderate difficulties in maintaining social functioning.

From January 18 to May 3, 2012, Natasha O'Donnell, LMLP, provided psychological services to plaintiff. She initially assessed plaintiff due to reported anger management issues. Tr. 461. O'Donnell diagnosed major depressive disorder and moderate general anxiety disorder with a GAF score of 51, indicating moderate impairment in social or occupational functioning. Tr. 466. On February 2, 2012, plaintiff reported that he had continued difficulty coping with his mood and stress. On March 15, 2012, plaintiff reported that he was feeling very stressed and was compulsively counting things and that he did not even want to leave home at times. O'Donnell noted that plaintiff was agitated. Tr. 478-82. On May 3, 2012, plaintiff reported being very stressed out and depressed along with poor sleep. Tr. 477.

On August 9, 2012, O'Donnell completed a Medical Source Statement-Mental indicating that plaintiff had some moderate and marked limitations in his mental abilities to perform work-related activities. O'Donnell noted that she was "[n]ot a physician or medical source" and that she had not seen plaintiff in the last three months so her answers might not represent current functioning. Tr. 490-91. O'Donnell opined that plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain ordinary routine without special supervision; work in coordination with and in proximity to others; interact appropriately with the general public; get along with co-workers and peers without distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. Id. She opined that plaintiff had marked limitations in his ability to perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruption from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or moderate plans independently of others. Id.

On May 22, 2012, Dr. Thanh Vu, D.O., diagnosed anxiety, restless leg syndrome, bipolar disorder, hypertension, generalized osteoarthritis and asthma. Tr. 500-501. Over the next year, plaintiff visited Dr. Vu on many occasions, primarily for complaints of leg and knee pain and shortness of breath and cough. Dr. Vu diagnosed generalized osteoarthrosis involving multiple sites, muscle spasm, restless leg syndrome, allergic rhinitis, asthma, hypertension and anxiety.

B.   Plaintiff's Testimony

On July 26, 2013, plaintiff testified as follows.

He stopped working in 2008 because his legs bothered him and would "give out." Tr. 37.

He has constant pain in his legs and restless leg syndrome which has gotten progressively worse. Plaintiff takes a muscle relaxer for his restless leg syndrome, Lortab for pain and blood pressure medication. The medication helps and allows him to do daily household chores such as cooking, laundry and taking care of grandchildren. He sits on a stool to do dishes, and can no longer mow the lawn. He occasionally shops for groceries using a walker or electric cart. He can stand for no more than 15 minutes at a time, and can sit for about 45 minutes at time.

Plaintiff uses an inhaler for asthma and needs breathing treatments once or twice a month. Dust, pollen and overexertion trigger his asthma. Plaintiff has used methamphetamines and marijuana in the past but stopped in 2011.

### C. Vocational Expert Testimony

The ALJ asked the vocational expert about a hypothetical individual who can lift 20 pounds, complete an eight hour work day with the option of alternating sitting and standing as needed, is limited to simple, repetitive tasks because of a learning disorder, and cannot work in an environment with dust and environmental pollutants. Tr. 48. The vocational expert testified that an individual with such limitations would be able to perform work that exists in significant numbers in the national economy, including office clerk, information clerk and assembler. Tr. 49.

## V. ALJ Findings

In his decision of August 19, 2013, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: obesity, asthma, arthralgias, affective disorder, history of substance abuse in remission and anxiety disorder (20

CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift 20 pounds; can complete an eight hour workday, if given the option to alternate between sitting and standing, as needed, in up to 30 minute increments; is limited to simple repetitive tasks; and who cannot work any job with dust or environmental pollutants.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 21, 1971 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-25.

**VI.     Analysis**

The ALJ denied benefits at step five, finding that plaintiff is capable of performing light work as long as he has the option to alternate between siting and standing, is not exposed to pulmonary irritants and is assigned only simple, repetitive tasks.  Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and that he failed to link plaintiff's RFC to the medical and non-medical evidence.

Under SSR 96-8p, the ALJ must assess RFC based on all relevant evidence in the record, including information about individual symptoms and any "medical source statements," i.e. opinions by medical sources regarding what plaintiff can do despite his impairments. SSR 96-8p, 1996 WL 874184, at *7 (July 2, 1996).  The ALJ must discuss the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, [the ALJ] must discuss [plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity [plaintiff] can perform based on the evidence available in the case record.  [The ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. * * *
>
> The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, [the ALJ] must explain why the opinion was not adopted.

Id. (footnote omitted).

Here, the ALJ gave great weight to the opinion of Dr. Bergmann-Harms, the state agency consultant. Tr. 23. Dr. Bergmann-Harms opined that plaintiff should have limited social interaction. The ALJ did not include any limitations regarding social interaction in the RFC, however, and did not state why he did not do so.

-10-

Where an ALJ adopts most of a state agency consultant's opinion but does not explain why he does not adopt some aspect of it, the Court must remand. See Kerwin v. Astrue, 244 F. App'x. 880, 884 (10th Cir. 2007) (ALJ adopted most of state agency opinion, but did not address limitations in medical opinion that were not included in RFC or explain why RFC did not include limitations). Plaintiff asserts that the ALJ's failure to explain why he made findings inconsistent with the state agency assessment (or to state that he was rejecting portions of the assessment) requires remand. See Brown v. Comm'r, 245 F. Supp.2d 1175, 1187 (D. Kan. 2013) (where ALJ failed to cite medical records, testimony, or other evidence to support RFC findings, remanding so ALJ could link RFC with specific evidence in record). McLeland v. Astrue, No. 07-1233-MLB, 2009 WL 348290, at *5-7 (D. Kan. Feb. 11, 2009) (remand because ALJ afforded substantial weight to state agency assessment, but omitted one limitation when assessing RFC).

The Commissioner argues that the ALJ adequately accommodated the limitations set forth in Dr. Bergmann-Harms's opinion. Specifically, the Commissioner notes that the ALJ limited plaintiff to performing simple tasks, which by nature involve dealing with things rather than people. See 20 C.F.R. § 404.1521(a)(3) (defining basic work activities as understanding, remembering and carrying out simple instructions); 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00(i), 202.00(g) (bulk of unskilled work relates to working with things rather than with data or people); see also Conkle v. Astrue, 487 F. App'x 461, 462-63 (10th Cir. 2012) (unpublished) (reasonable for ALJ to rely on Grids despite finding that claimant was limited to light work with simple instructions and no more than incidental work with public; primary work functions in bulk of unskilled work relate to working with things rather than people). But the ALJ did not ask the vocational expert how the need to limit social interaction would affect the occupational job base. The Court cannot simply infer that the ALJ

-11-

somehow accommodated the social limitation. See Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). The Court therefore finds that it must remand for further findings regarding plaintiff's limitations in social functioning.

Plaintiff also asserts that the ALJ erred in his assessment of O'Donnell's medical opinion. O'Donnell treated plaintiff from January 18 to May 3, 2012. Based on her treatment, O'Donnell completed a Medical Source Statement-Mental on August 9, 2012. She indicated that due to his mental impairments, plaintiff had significant limitations in the ability to complete a workday or week or maintain regular attendance or respond appropriately to criticism from supervisors. Tr. 490-91.

Social Security Ruling 96-2p requires that in making an unfavorable decision, the ALJ must specify "reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). If a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, the ALJ must give it controlling weight. SSR 96-2p, 1996 WL 374188, at *1 (Soc. Sec. Admin. July 2, 1996). Here, the ALJ stated that he gave little weight to O'Donnell's opinion because (1) she was not a physician or medical source and (2) her opinion was based on information gathered during individual psychotherapy sessions. Tr. 23. These reasons are not supported by the record or the law.[1]

---

[1] The ALJ noted that O'Donnell stated that she is not a physician or medical source. Further, O'Donnell stated that she had not seen plaintiff since May of 2012 (three months prior to authoring the opinion), and thus her opinion might not reflect plaintiff's later level of functioning. Tr. 23, 491.

-12-

First, this Court has found that master's level psychologists are "acceptable medical sources" and Social Security regulations do not exclude them from consideration as "acceptable medical sources." Huiett v. Colvin, No. 12-1350-SAC, 2014 WL 1095028, at *3 (D. Kan. Mar. 19, 2014); Gage v. Colvin, No. 14-1238-JWL, 2015 WL 3504431, at *4-5 (June 3, D. Kan. 2015). O'Donnell held a temporary license as a master's level psychologist, and this Court has found that a medical provider with a valid temporary license is an "acceptable medical source." Huiett, No. 12-1350–SAC, 2014 WL 1095028 at *3.

Second, the ALJ decision to discount O'Donnell's opinion because she based it on information gathered during individual psychotherapy sessions does not comport with the law. The Tenth Circuit has stated that "psychological opinion may rest . . . on observed signs and symptoms." Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). In addition, the ALJ did not state what evidence was contrary to O'Donnell's medical opinion and did not explain how O'Donnell's opinion was inconsistent with the evidence as a whole. If the ALJ gives less than controlling weight to a treating source opinion, he must explain the weight he gave the opinion and give good reasons for doing so. If he completely rejects the opinion, his reasons must be specific and legitimate. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

Here, as noted, the ALJ stated that he gave great weight to the opinions of the State agency psychologists because they were compatible with the record. Tr. 23. To the extent that the ALJ relied on inconsistencies between O'Donnell's opinion and the State agency non-examining doctors' opinions, the ALJ must explain why the opinions of reviewing physicians outweigh the opinion of the treating source. Warren v. Barnhart, No. 05-2331-JWL, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006). He must also examine the factors listed in 20 C.F.R. §§ 404.1527(c)(2-6),

416.927(d)(2-6).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** for further proceedings in accordance with this memorandum and order.

Dated this 30th day of August, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
